**Joseph G. Sansone**
**Chief, Market Abuse Unit**
**Deborah A. Tarasevich***
**Martin L. Zerwitz**
**John P. Lucas***
**Attorneys for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
**100 F. Street, NE**
**Washington, DC 20549**
**(202) 551-4566 (Zerwitz)**
*Not admitted in the U.S. District Court for the Southern District of New York

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) ) Plaintiff, ) ) v. ) ) PETER CHO, ) ) Defendant. ) | Civil Action No. 18-cv-11811 **COMPLAINT** **ECF Case** |

Plaintiff Securities and Exchange Commission (the "Commission") files this Complaint against Defendant Peter Cho ("Cho" or "Defendant") and alleges as follows:

**SUMMARY**

1. This case involves insider trading by Cho, who generated $251,386 in illegal profits in less than one month by purchasing call options of Virgin America Inc. ("Virgin") in advance of the April 4, 2016 announcement that Virgin would be acquired by Alaska Air Group, Inc. ("Alaska"). Cho purchased the Virgin call options based on material nonpublic information about the acquisition that he misappropriated from his then-fiancé, an investment banker who worked on the deal.

2. Cho's then-fiancé (hereinafter "Investment Banker A") worked in the New York office of an international investment bank ("Bank A") that advised Alaska on its acquisition of Virgin. Investment Banker A worked on the Virgin-Alaska deal from beginning to end and often worked on the deal late at night and on weekends from the apartment that Investment Banker A shared with Cho.

3. Through his proximity to Investment Banker A, Cho learned of Alaska's efforts to acquire Virgin. In breach of a duty of trust or confidence that he owed to Investment Banker A, Cho purchased 525 out-of-the-money, short-duration Virgin call options with strike prices of $35 and $40 between March 10 and 21, 2016.[1] On several occasions, Cho's purchases represented 100% of the daily trading volume and/or Cho held 100% of the open interest in the options series that he traded. On March 23 and 28, 2016, after news of the potential transaction was reported in the news media, Cho sold those call options for profits of $68,729.43. He then used a portion of those proceeds to purchase 200 additional out-of-the-money, short-duration call options, this time with a higher strike price of $45.

4. On the morning of April 4, 2016, before the market opened, Virgin and Alaska announced that they had entered into a definitive merger agreement under which Alaska would acquire Virgin America for $57 per share in cash. Virgin's stock price closed that same day at $55.11 per share, an increase of almost 42%. Cho sold all his remaining Virgin call options on April 4, 2016, for profits of $182,656.76. In total, between March 10 and April 4, 2016, through his illegal trading, Cho turned an initial cash outlay of $4,124.49 into ill-gotten profits of $251,386.19.

---

[1] Each call option is, in substance, a contract that gives the option's owner the right, but not the obligation, to buy 100 shares of the underlying stock at a set price per share, known as the option's strike price, on or before a set future date, known as the option's expiration date. Generally, the holder of a call option benefits when the price of the underlying stock increases. A call option is considered "out-of-the-money" if its strike price is greater than the current market price of the underlying stock.

2

## VIOLATIONS

5.      By virtue of the conduct alleged herein, Cho violated, and unless restrained and enjoined will violate again, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§ 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §§ 240.10b-5].

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

6.      The Commission brings this action under the authority conferred upon it by Sections 21(d) and 21A of the Exchange Act [15 U.S.C. §§ 78u(d), 78u-1]. The Commission seeks a final judgment (1) permanently enjoining Cho from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint; (2) requiring Cho to disgorge all ill-gotten gains from the unlawful insider trading alleged in this Complaint, together with prejudgment interest; and (3) ordering Cho to pay civil money penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]. The Commission seeks any other relief the Court may deem appropriate pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)].

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e), 21A, and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), 78u-l, and 78aa].

8.      Venue lies in this District pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Certain of the acts, practices, transactions, and courses of business constituting the violations occurred within the Southern District of New York, and during the time of the events described herein, the Defendant resided and transacted business in this District. For example, during the relevant time, Cho misappropriated the material nonpublic information from Investment Banker A within this District and placed trades in Virgin securities based on such information within this District.

## DEFENDANT

9. Cho, age 39, resides in New York, New York. During the relevant time, Cho was a manager in the advisory service practice of an international accounting firm ("Accounting Firm A").

## RELEVANT ENTITIES

10. During the relevant time, Virgin was a Delaware corporation headquartered in Burlingame, California that operated an airline providing air travel in the United States and Mexico. On April 4, 2016, Alaska and Virgin announced that they had entered into a definitive merger agreement pursuant to which Alaska would acquire Virgin for $57 per share. Prior to that merger, which closed on December 14, 2016, Virgin's common stock was registered with the Commission pursuant to Section 12(b) of the Exchange Act and traded on NASDAQ under ticker symbol VA.

11. Alaska is a Delaware corporation headquartered in Seattle, Washington that operates multiple airlines. Alaska's common stock is registered with the Commission pursuant to Section 12(b) of the Exchange Act and trades on NYSE under the ticker ALK.

## FACTS

### A.  Background

12. At the time of the illegal trading alleged in this Complaint, Cho was a manager at Accounting Firm A where he provided financial advisory services to bank clients.

13. As a financial professional, Cho was aware of the prohibition against illegal insider trading. Accounting Firm A maintained policies and procedures concerning insider trading and the protection of confidential information, policies on which Cho received training and with which he was required to, and did, confirm compliance.

14. Investment Banker A worked on Alaska's potential acquisition of Virgin for several months in advance of the announcement of the deal on April 4, 2016. During this time period, Cho and Investment Banker A resided in a one-bedroom apartment in Manhattan, where they had lived together for about four years. By March 2016, when Cho placed the first trades at issue in this Complaint, Cho and Investment Banker A had had been engaged for approximately one year and had been in a committed relationship for over five years.

### B. Investment Banker A Possessed Material Non-Public Information While Advising Alaska on the Acquisition of Virgin

15. Alaska retained Bank A, among other financial advisors, in 2015 to provide investment banking services concerning strategic acquisitions. By late November 2015, Alaska and its advisors had identified Virgin as a potential acquisition target, and on December 17, 2015, Alaska sent an initial offer to acquire all of Virgin's outstanding common shares for $44.75 per share. On that same day, the closing price of Virgin shares on NASDAQ was $36.07.

16. Confidential discussions of a sale of Virgin continued through February 2016. Virgin's board of directors met on February 25, 2016 and encouraged Alaska to submit a revised proposal by the following week before significant due diligence could commence.

17. At the time, Investment Banker A was a member of Bank A's mergers and acquisitions group, and worked on the deal team advising Alaska on the Virgin acquisition. Investment Banker A first became aware of a potential acquisition of Virgin by Alaska in late 2015 and worked on the matter from that time through its completion.

18. From at least February 2016 through the April 4, 2016 announcement of the deal, Investment Banker A worked frequently and substantially on Alaska's effort to acquire Virgin. Investment Banker A sometimes performed this work in close proximity to Cho, including on nights and weekends in the apartment they shared and during short trips that Investment Banker A and Cho took together in February and March 2016.

19. On Thursday, February 25, 2016, Investment Banker A assisted Alaska with its revised offer to purchase Virgin and prepared for due diligence review. Among other things, Investment Banker A drafted a list of key due diligence items that Alaska would request from Virgin. The following evening (Friday, February 26, 2016), Investment Banker A and Cho flew together to another state to interview wedding planners and tour wedding venues over the weekend. They stayed together in a hotel room.

20. Investment Banker A interrupted their weekend plans to work on the transaction. On short notice, Investment Banker A was required to participate on a deal team conference call, causing the couple to push back their Saturday evening dinner reservation by almost two hours to accommodate the call.

21. The following day (Sunday, February 28, 2016), Investment Banker A logged into Bank A's network remotely in the morning and evening to work on the transaction, and participated on work-related calls.

22. The next day (Monday, February 29, 2016), after Investment Banker A and Cho had returned to New York, Investment Banker A emailed senior Alaska officials several questions on the financial model that Bank A had been working on related to the acquisition. Attached to the email was a copy of the relevant model, which reflected an assumed acquisition price of $45.50 per Virgin share. Later that day, Alaska submitted a formal offer to buy Virgin for $45 per share in an all cash deal. Shares of Virgin closed that day at $31.19 on NASDAQ.

23. On Thursday, March 3, 2016, Investment Banker A participated on a call where Virgin's financial adviser laid out the following expected timeline for the transaction: March 28 – deadline to receive best and final bids; March 29 – Virgin Board meeting; and March 29 or 30 – date to sign and announce deal.

24. The next evening (Friday, March 4, 2016), Investment Banker A texted Cho that Investment Banker A would eat dinner in the office. After finishing a meeting, Investment Banker A left the office close to 8:30 pm, and met Cho for drinks.

25. Throughout the weekend of March 5-6, 2016, Investment Banker A worked on the Virgin acquisition from the apartment Investment Banker A shared with Cho. Working practically around the clock, Bank A employees, including Investment Banker A, prepared a presentation for Alaska's board of directors analyzing the strategic implications of acquiring Virgin under different financing scenarios. The presentation was finalized and sent to Alaska on Monday, March 7, 2016.

26. Investment Banker A then prepared for the due-diligence review of Virgin that was to begin that week. Investment Banker A was charged with organizing the due diligence efforts for the Bank A deal team and, along with the rest of the team, was told to be ready to begin due diligence right away once they received access to the virtual data room where important Virgin documents were stored.

27. Investment Banker A received access to Virgin's virtual data room at 1:20 pm on Wednesday, March 9, and accessed it regularly through March 30.

C.  **Cho Buys, Then Sells His First Tranche of Virgin Call Options.**

28. Cho was an active option and stock trader, but had not traded securities of Virgin or any other airline before March 2016.

29. On Wednesday, March 9, 2016, Cho first attempted to purchase Virgin call options through his on-line trading account at 10:04 am, but was unsuccessful due to insufficient funds. Cho then sold some options purchased two days prior in two other issuers and used those proceeds on Thursday, March 10 to make his initial purchase of Virgin call options.

30. Between Thursday, March 10 and Monday, March 21, 2016, Cho purchased a total of 525 Virgin call options, all expiring on April 16, 2016, for a total purchase price of $4,124.49. Of the 525 call options, 225 had a $35 strike price and 300 had a $40 strike price. During this time period, Virgin's common stock traded between $28.63 and $31.35 per share. Cho's trades essentially represented a bet that the price of Virgin common stock would increase substantially in less than one month, or else he would lose his entire investment.

31. Cho's trading equaled 100% of the daily trading volume in those particular series on three trading days, and 100% of the outstanding open interest on at least two of the trading days between March 10 and March 21.

32. The following table depicts Cho's initial tranche of Virgin buys:

| First Tranche Buys – Virgin April 2016 Call Options | | | | | | |
|---|---|---|---|---|---|---|
| Purchase Date | Order Size | Strike Price | % Series Volume | % Open Interest | Avg. Price | Total Cost[2] |
| 3/10/2016 | 75 | $35 | 85% | 58% | $0.10 | $864.21 |
| 3/14/2016 | 150 | $40 | 100% | 100% | $0.05 | $953.43 |
| 3/17/2016 | 75 | $35 | 100% | 61% | $0.10 | $839.20 |
| 3/18/2016 | 150 | $40 | 100% | 100% | $0.05 | $978.44 |
| 3/21/2016 | 75 | $35 | 25% | 47% | $0.05 | $489.21 |
| | | | | | Total: | $4,124.49 |

33. On March 23, two days after Cho's last Virgin options purchase, Bloomberg published an article titled "Virgin America Said to Consider Sale after Receiving Interest." The article reported that Virgin was reaching out to potential buyers, and was the first-known report of a possible transaction involving Virgin. In light of the news, Virgin's stock price increased 13% that day and closed at $34.72 per share. Cho sold close to half his holdings – 125 of the $35 call options and 150 of the $40 call options – the same day for proceeds of $21,735.75, net of commissions and fees.

---

[2] Total cost equals purchase price plus brokerage commissions and fees.

34. Early the next day (Thursday, March 24, 2016), Investment Banker A and Cho went on a four-day vacation and stayed together in the same hotel room. During the vacation, Investment Banker A continued to work on the Alaska-Virgin transaction. Investment Banker A logged in remotely from their shared hotel room and reviewed materials for an Alaska Board meeting scheduled for the next day. The materials reflected an updated timeline, including an expected deal announcement on April 4, 2016, and described the results of the extensive due diligence that had been conducted between March 9 and March 21, 2016.

35. While on vacation with Cho, Investment Banker A received updated financial forecasts and modeling from Alaska, participated in a deal team call about the financial models, and exchanged emails with an Alaska officer. Investment Banker A also prepared for a presentation of the Virgin deal to a Bank A committee, which was scheduled to meet the following Tuesday (March 29, 2016), including preparing a memorandum for the committee that reflected the deal's then-expected timing: an Alaska Board meeting to approve the merger on March 30, and signing of the deal on April 4.

36. Finally, during this period, Alaska requested that its financial advisors, including Bank A, update financial analyses concerning a competitor airline's ability to interlope and acquire Virgin at potential offering prices of $45, $47.50 and $50 per share. Investment Banker A was involved in these updates and was copied on the email sending the updated analysis to Alaska's CFO on Friday, March 25, 2016.

37. On Monday, March 28, 2016, the day after Investment Banker A and Cho returned from vacation, Bloomberg published another article which reported that Virgin had received takeover offers from Alaska as well as another airline and that a deal could be announced as early as the following week. The article cautioned that it was unclear whether other suitors would emerge, and that Virgin may yet decide to abandon sale negotiations and

9

remain independent. Virgin's stock closed up over 10% on the news, at $37.70 per share. That same day, shortly after the article was posted, Cho sold the balance of his Virgin options – 100 of the $35 call options and 150 of the $40 call options – for net proceeds of $51,118.17.

38.     Together with Cho's March 23 options sales, Cho's options sales on March 28 generated total proceeds of $72,853.92 and gains of approximately $68,729.43 as reflected in the table below.

| First Tranche Sales - Virgin April 2016 Call Options ||||| 
|---|---|---|---|---|
| Sale Date | Order Size | Strike Price | Avg. Price Per Contract | Net Proceeds[3] |
| 3/23/2016 | 125 | $35 | $1.42 | $17,604.28 |
| 3/23/2016 | 150 | $40 | $0.29 | $4,131.47 |
| 3/28/2016 | 100 | $35 | $3.80 | $37,846.89 |
| 3/28/2016 | 150 | $40 | $0.90 | $13,271.28 |
|  |  |  | Net Sales Proceeds: | $72,853.92 |
|  |  |  | Minus Cost Basis: | ($4,124.49) |
|  |  |  | First Tranche Profits: | $68,729.43 |

**D.     Cho Buys, Then Sells His Second Tranche of Virgin Call Options**

39.     On Tuesday, March 29, 2016, the day after selling the remainder of his first tranche of Virgin call options, Cho used a portion of the proceeds to purchase a second tranche of short-term Virgin call options that expired April 16, 2016. Cho purchased 100 call options at a strike price of $45, the minimum potential per share acquisition price Alaska had recently asked Bank A to use in its financial analysis for the Virgin acquisition. On March 29, 2016, Virgin shares opened at $37.95 per share and traded between a high of $38.73 per share and a low of $37.57 per share, closing at $37.99 per share.

40.     Cho's call option purchases were 57.47% of the daily trading volume and represented 56.50% of the outstanding open interest for that option series that day. Just after

---

[3] Net proceeds equals sales proceeds minus brokerage commissions and fees.

11:00 pm that night, Investment Banker A texted Cho, who was out of town for work, that Investment Banker A had another couple of hours of work and needed to be back in the office by 7:00 am, and that Investment Banker A had a lot of work the coming weekend.

41. Two days later (Thursday, March 31, 2016), Cho purchased 100 more short-term Virgin call options set to expire on April 16, 2016 at a strike price of $45. These options were approximately $6 to $7 out of the money based on the prices at which Virgin common stock traded that day. Cho's purchases were 61.35% of the daily volume and 69.93% of the outstanding open interest for that option series that day. Cho's March 29 and March 31 options trades are set forth in the chart below.

| Second Tranche Buys - Virgin April 2016 Call Options ||||||| 
|---|---|---|---|---|---|---|
| Purchase Date | Order Size | Strike Price | % Series Volume | % Open Interest | Avg. Price | Total Cost$^2$ |
| 3/29/2016 | 100 | $45 | 57% | 57% | $0.325 | $3,402.28 |
| 3/31/2016 | 100 | $45 | 61% | 70% | $0.25 | $2,652.28 |
|  |  |  |  |  | Total: | $6,054.56 |

42. Ultimately, on April 1, 2016, Alaska made a final offer to acquire Virgin at a price of $57 per share. Virgin accepted, and an agreement was signed. Alaska and Virgin announced their agreement before the market opened on Monday, April 4, 2016. Virgin's stock price opened at $54.49 per share after closing at $38.90 per share the previous trading day.

43. The morning of April 4, 2016, Cho sold all of his second tranche of Virgin call options for net proceeds of $188,711.32, representing profits of $182,656, which brought his total profits from trading the Virgin call options to $251,386.19, as depicted in the following table:

11

| Second Tranche Sales - Virgin April 2016 Call Options ||||
|---|---|---|---|
| Sale Date | Order Size | Avg. Price Per Contract | Net Proceeds[3] |
| 4/4/2016 | 200 | $9.50 | $188,711.32 |
| | | Net Sales Proceeds: | $188,711.32 |
| | | Minus Cost Basis: | ($6,054.56) |
| | | Second Tranche Profits: | $182,656.76 |
| | | Plus First Tranche Profits | $68,729.43 |
| | | **Total Trading Profits** | **$251,386.19** |

### E. Cho Knowingly or Recklessly Traded on the Basis of Misappropriated Material Nonpublic Information

44. At all relevant times, Cho owed a duty of trust or confidence to his fiancé, Investment Banker A, based on their relationship which included a history, pattern, and practice of sharing confidences. At the time of Cho's trading, Cho and Investment Banker A had been in a committed relationship for at least five years, lived together for at least four years, and had been engaged to be married for almost one year.

45. Cho obtained the material nonpublic information about the acquisition by listening in on Investment Banker A's work telephone calls and/or by seeing transaction-related emails or documents Investment Banker A was reviewing or drafting in close proximity to Cho.

46. Cho knew or was reckless in not knowing that his trading in Virgin options was on the basis of material nonpublic information that he misappropriated from Investment Banker A in breach of a duty.

47. For this reason, Cho did not discuss his trading with Investment Banker A, including the large profit his trading generated.

### FIRST CLAIM FOR RELIEF

**Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**

48. The Commission realleges and incorporates by reference paragraphs 1 through 47, as though fully set forth herein.

49.     By virtue of the foregoing, Cho, directly or indirectly, singly or in concert with others, in connection with the purchase or sale of a security, with scienter, used the means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national securities exchange to: (1) employ devices, schemes, or artifices to defraud; (2) make untrue statements of a material fact or to omit to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (3) engage in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon others.

50.     By virtue of the foregoing, Cho, directly or indirectly, violated and, unless restrained and enjoined, will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**PRAYER FOR RELIEF**

**WHEREFORE**, the Commission respectfully requests that this Court enter a Final Judgment:

**I.**

Finding that Cho violated the provisions of the federal securities laws as alleged herein;

**II.**

Permanently restraining and enjoining Cho and his agents, servants, employees, and attorneys and all persons in active concert or participation with him who receive actual notice of the injunction by personal service or otherwise from, directly or indirectly, engaging in conduct in violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

### III.

Ordering Cho to disgorge, with prejudgment interest, all illicit trading profits or other ill-gotten gains received as a result of the conduct alleged in this Complaint, pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)];

### IV.

Ordering Cho to pay a civil monetary penalty pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]; and

### V.

Granting such other and further relief as this Court may deem just and proper.


Dated: New York, New York
       December 17, 2018

Martin L. Zerwitz
Securities and Exchange Commission
100 F Street NE
Washington, DC 20549
Phone: 202-551-4566
Email: ZerwitzM@SEC.gov